UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

BYRON E. ADAMS,

                Plaintiff,

    v.

S. CULLINAN, M.D.,

                Defendant.

Case No.  12-cv-50297

Hon. Frederick J. Kapala

Magistrate Iain D. Johnston

**PLAINTIFF'S COMBINED MOTION TO COMPEL
CORRECTIONAL HEALTHCARE COMPANIES, INC.'S
COMPLIANCE WITH SUBPOENA AND FOR ORDER TO SHOW CAUSE**

Plaintiff Byron E. Adams, by and through his attorneys, Schiff Hardin LLP, hereby moves the Court to compel Correctional Healthcare Companies, Inc. ("CHC") – a third party that is represented by the same attorneys as Defendant Stephen Cullinan ("Cullinan") – to comply with the subpoena served on CHC on October 9, 2014 (the "Subpoena," attached as Ex. 1), and for an Order to Show Cause as to why CHC did not comply with the Court's January 13, 2015 Order that CHC produce the witness who is most knowledgeable about CHC's responses to the Subpoena.  In support of this Combined Motion, Mr. Adams states as follows:

1.      Mr. Adams filed this lawsuit against Cullinan for Cullinan's deprivation of Mr. Adams' constitutional right to adequate medical treatment. The Court denied Cullinan's Motion to Dismiss and held that Mr. Adams stated a proper cause of action against Cullinan. (Dkt. 53). This lawsuit involves Cullinan's inadequate treatment and management of Mr. Adams' diabetes, including but not limited to Cullinan's failure to prescribe Mr. Adams a diabetic diet, leaving Mr. Adams to eat McDonalds every day for lunch and pizza most nights for dinner for almost 2.5

years while awaiting trial. CHC was Cullinan's employer during the time period that Mr. Adams was in Cullinan's care – September 2009 through January 2012.

2.      The Subpoena requested 22 categories of documents related to this lawsuit. CHC's responses appeared deficient (consisting of less than 50 pages), and Mr. Adams' counsel therefore – on November 3, 2014 – requested deposition dates for Brian Hamilton, who attested that CHC's responses were "true, correct and complete." *See* CHC's Resp. to the Pl.'s Subpoena, attached as Exhibit 2. Having not received dates for a deposition, Mr. Adams filed a Motion to Compel, explaining that he "would like to depose Mr. Hamilton regarding CHC's production, as he believes the production may be deficient in other respects." Dkt. 92 ¶ 9.

3.      On January 13, 2015, this Court granted the Motion to Compel and ordered CHC to present the witness most knowledgeable about CHC's responses to the Subpoena. *See* January 14, 2015 Minute Entry, attached as Exhibit 3. The Order required CHC to produce the person most knowledgeable, rather than specifically requiring Mr. Hamilton's deposition, because CHC's counsel represented that "quite honestly, the deposition of Brian Hamilton would be a waste of everyone's time," and instead proposed deposing Sarah Thomas. Tr. from Jan. 13, 2015 Hearing ("Hearing Tr."), attached as Exhibit 4, at 16:16-17:3. Mr. Adams' counsel agreed to depose the person most knowledgeable, explaining that "Mr. Hamilton is the person who attested to the responses, and there appear to be several issues with some of the responses. So, if [Ms. Thomas is] going to be familiar and knowledgeable with the responses and with the documents, that's fine with us." *Id*. at 17:5-10. The Court then stated on the record:

> What I don't want happening -- he [Brian Hamilton] signed off on this. I don't want Ms. Thomas coming in saying, "well, I don't know why he signed that. That's wrong. That's not – oh, he should have checked here." I suppose that's good and bad in a way for you, but it's going to delay discovery. It's going to result in additional motions, including probably motions for sanctions. So, produce the person most knowledgeable about the documents produced in the discovery responses.

*Id*. at 17:11-20.[1]

4.     CHC instead produced a witness who had never seen the Subpoena, had never seen the responses to the Subpoena, and had no personal knowledge of any searches that CHC may have conducted for responsive documents:

> Q.     Are you the person who's most knowledgeable about CHC's responses to the subpoena that was served on CHC?
>
> A.     A subpoena or was it discovery requests?
>
> Q.     It was a subpoena for documents.
>
> A.     I have not seen the subpoena itself.
>
> Q.     You've never seen the subpoena that was served on CHC?
>
> A.     No, I have not. Not to my knowledge.
>
>       ***
>
> Q.     You've been handed Exhibit 9 which is CHC's responses to the plaintiff's subpoena. And I just want to clarify that you've never seen this document before?
>
> A.     That is correct.

January 20, 2015 Deposition of Sarah Thomas ("Thomas Dep."), attached as Exhibit 5, at 10:15-24, 12:22-13:1.   CHC's counsel clearly was aware that Ms. Thomas was not the most knowledgeable about CHC's responses and documents, because Mr. Brueggen repeatedly objected as to "foundation" for questions related to the responses and the documents produced.

5.     Because Ms. Thomas had no personal knowledge of the Subpoena, and therefore had not conducted any search as to what responsive documents may exist, Ms. Thomas was unable to verify that CHC's responses and production were complete and accurate.  And because the repeated assurances of CHC's counsel that the responses are complete and accurate have

---

[1] CHC's counsel attempt to crop the Court's Order by suggesting that the deposition was limited to authenticating the policies produced in response to the Motion to Compel.  But the statements made on the record at the January 13, 2015 hearing, and the Court's January 14, 2015 Minute Entry, make clear that the Order was not so limited.

turned out to be false,[2] Mr. Adams is unable to ascertain which responses are complete.  Mr.

Adams therefore seeks an order compelling compliance with the Subpoena, as follows:

> A.   Request 1: All documents from September 1, 2009 to the present that discuss, refer, or relate to Adams, including, but not limited to, all communications involving Adams.
>
> **RESPONSE: None other than those contained in the medical records which were previously produced by the Lee County Jail.**

Ms. Thomas had no knowledge of what was done to search for any responsive

documents, and was unable to verify that the production was complete.  Thomas Dep. at 14:11-

13 ("I have no personal knowledge as to whether that search was conducted.").

> B.   Request 2: All documents from September 1, 2009 to the present that discuss, refer, or relate to medical treatment or diagnostics performed on Adams.
>
> **RESPONSE: None other than those contained in the medical records which were previously produced by the Lee County Jail.**

Ms. Thomas had no knowledge of what was done to search for any responsive

documents, and was unable to verify that the production was complete.  Thomas Dep. at 16:5-6

("I have no personal knowledge as to whether that search was conducted.").

> C.   Request 3: All documents from September 1, 2009 to the present that discuss, refer, or relate to Adams' request for a special diet.
>
> **RESPONSE: None other than those contained in the medical records which were previously produced by the Lee County Jail.**

Ms. Thomas had no knowledge of what was done to search for any responsive

documents, and was unable to verify that the production was complete.  Thomas Dep. at 17:2-3

("I have no personal knowledge as to [whether the search was conducted]").

---

[2] *See* Hearing Tr. at 10:11-22 ("Well, it sounds like [CHC's] been saying that [they have given everything they have] for awhile now, and all of a sudden you're getting things when somebody comes back from maternity leave that causes me some pause…[a]nd that gives me some concern that what was sent before may not be so accurate").

D.     **Requests No. 4-6**.[3]

Following the Court's January 13, 2015 Order related to Policies and Procedures, CHC produced 110 pages of policies and procedures, including unsigned pages that designated Cullinan, the Jail nurse, and the Jail Superintendent as individuals whose signatures were required.   Mr. Adams' counsel requested, but has not received, the signed signature pages. These signature pages are critical because they demonstrate Cullinan's knowledge of the policies.  While Ms. Thomas testified that she conducted an "exhaustive" search for the signed cover sheets, she could not recall whether she searched in emails.[4] Thomas Dep. at 58:25-59:3.

E.     Request 7: All documents from October 1, 2004 to the present that discuss, refer, or relate to the provision, or lack thereof, of special diets to diabetic inmates.

**RESPONSE: None other than those previously produced to plaintiff's attorneys.**

Ms. Thomas had no knowledge of the documents referred to in the response or any search for responsive documents, and was unable to verify that the production was complete:

Q.     What documents are referred to where it says none other than those previously produced to the plaintiff's attorneys?

Mr. Brueggen: Object to the form of the question.

A.     I wouldn't know specifically what defense counsel had previously provided. I have no way of knowing that information.

Q.     Do you know what Brian Hamilton was referring to when he signed under oath that this was an accurate response?

---

[3] Requests Nos. 4-6, which sought relevant policies and procedures, clinical protocols, and forms, were also the subject of this Court's January 13, 2015 Order.   Ms. Thomas did authenticate the documents produced in accordance with the Court's January 13, 2015 Order, testimony that was only necessitated by – and elicited because of –  the refusal of CHC's counsel to stipulate as to the authenticity of the documents produced by her own client.

[4] Ms. Thomas testified that the signature pages were maintained at the jails, rather than at CHC. Thomas Dep. at 59:4-20.  However, testimony has also been given in this case (by Nurse Sandy Lewis) that each time a revised set of policies was given to the Jail, a representative of CHC removed the prior versions from the Jail.  These removed versions would presumably include the signature pages.

Mr. Brueggen: Object to speculation, foundation.

A.     Again, I have no way of knowing. That's beyond my personal knowledge.

Q.     What was done to search for all documents from October 1, 2004, to the present that discuss, refer, or relate to the provision, or lack thereof, of special diets to diabetic inmates?

A.     I have no idea --

Mr. Brueggen: Object to foundation.

A.     I have no personal knowledge of what specifically was done to search for those documents.

Thomas Dep. at 17:16-18:20.

F.     Request 8: All studies or evaluations from October 1, 2004 to the present performed by or for CHC concerning the treatment, diagnosis, and/or management of diabetic inmates.

**RESPONSE: None.**

Ms. Thomas had no knowledge of what was done to search for any responsive documents, and was unable to verify that the production was complete. Thomas Dep. at 20:1-2 ("I don't have any knowledge as to how any search was conducted.").

G.     Request 9: All studies or evaluations from October 1, 2004 to the present performed by or for CHC concerning diets of diabetics and/or diabetic inmates.

**RESPONSE: None.**

Ms. Thomas had no knowledge of what was done to search for any responsive documents, and was unable to verify that the production was complete. Thomas Dep. at 20:23-25 ("Again, I have no personal knowledge as to what search was conducted in response to this question.").

H.     Request 10: All documents related to CHC's employment of, or relationship with, Cullinan.

**RESPONSE: See the attached contracts and employee file of Dr. Cullinan.**

Ms. Thomas testified that she did not know whether any responsive documents existed other than those produced (which she saw for the first time at her deposition). *See* Thomas Dep. at 24:9-26:5. Ms. Thomas was therefore unable to verify that the production was complete.

I.      Request 11: A complete copy of Cullinan's personnel file.

**RESPONSE: See the attached employee file of Dr. Cullinan.**

Ms. Thomas testified that she (1) had not previously seen Cullinan's personnel file; (2) has "limited knowledge as to" what an employee personnel file at CHC consists of; (3) had not personally searched for Cullinan's personnel file; and (4) has "no personal knowledge regarding" whether the document produced to Mr. Adams is a complete copy of Cullinan's personnel file. Thomas Dep. at 21:1-22:5, 26:10-18. Ms. Thomas was therefore unable to verify that the production was complete.

J.      Request 12: All documents related to any employment contracts entered into between Cullinan and CHC.

**RESPONSE: See the attached contracts and employee file of Dr. Cullinan.**

Ms. Thomas did not know whether there were employment contracts between Cullinan and CHC that had not been produced, and was unable to verify that the production was complete. Thomas Dep. at 26:25-27:4.

K.      Request 13: All documents related to the relationship between Cullinan and CHC.

**RESPONSE: See the attached contracts and employee file of Dr. Cullinan.**

Ms. Thomas did not know whether there were additional documents related to the relationship between Cullinan and CHC that had not been produced, and was unable to verify that the production was complete. Thomas Dep. at 27:9-12.

L.      Request 15: All documents related to payments by Lee County Jail to CHC for services rendered during the time period of September 1, 2009 to December 31,

2012 and/or pursuant to contracts or agreements that were in effect at any time from September 1, 2009 to December 31, 2012.

**RESPONSE: CHC does not know what "documents" the plaintiff is referring to.**

Ms. Thomas testified that "presumably" documents related to payments from the Jail to CHC exist (and common sense dictates as much), but she does not know what was done to search for those documents. Thomas Dep. at 29:2-21. Thus, Ms. Thomas was unable to verify that the production was complete.

      M.    Request 16: All employee handbooks, policies, codes of conduct, training manuals, and any similar or related documents CHC provided to its employees providing medical care in, and related to the provision of medical care in, Lee County Jail from September 1, 2009 to December 31, 2012.

          **RESPONSE: None.**

Mr. Adams' counsel twice asked CHC's counsel to confirm that the response to Request 16 was complete, and CHC's counsel responded that it was complete. Given that policies and procedures clearly exist, the response to Request 16 is implausible.

Ms. Thomas quibbled (upon reading the request for the first time) with the meaning of the word "provided." But ultimately, Ms. Thomas' testimony confirms that this response was incomplete, as there were, at the very least, policies provided at the Jail for the employees' review that have not yet been produced to Mr. Adams. Thomas Dep. at 32:13-25.

      N.    Request 17: All documents related to any formal and/or informal warnings to, reprimands of, and/or discipline of Cullinan from September 1, 2009 to the present.

          **RESPONSE: See attached employee file of Dr. Cullinan.**

Cullinan's employee file did not contain any responsive documents. Further, Ms. Thomas had no knowledge of what was done to search for any responsive documents, and was unable to verify that the production was complete:

> Q.     What is this answer referring to when it says see the attached employee file of Dr. Cullinan?
>
> Mr. Brueggen: Object to foundation.
>
> A.     I didn't prepare the answer, so I don't know what the person who was preparing it meant to refer to.
>
> Q.     Do you know whether there are documents related to any formal and/or information warning to, reprimands of, and/or discipline of Cullinan from September 1, 2009, to the present?
>
> A.     I do not.

Thomas Dep. at 33:19-34:8.

> O.     Request 18: All documents related to any evaluations, reviews, appraisals, and/or any other communication of any kind, whether formal or informal, relating to Cullinan's job performance, conduct, and/or behavior from September 1, 2009 to the present.
>
> **RESPONSE: See attached employee file of Dr. Cullinan.**

Cullinan's employee file did not contain any responsive documents. Further, Ms. Thomas had no knowledge of whether responsive documents exist, and was unable to verify that the production was complete. Thomas Dep. at 34:17-24.

> P.     Request 19: All documents that discuss, refer, or relate to any complaint or lawsuit filed against Cullinan from October 1, 2004 to the present.
>
> **RESPONSE: CHC does not possess any such documents.**

Ms. Thomas testified that responsive documents *should* exist, but lacked personal knowledge about the basis for the response or the search conducted:

> Q.     Explain to me how it's possible that CHC does not possess any documents related to lawsuits filed against Cullinan from October 1, 2004, to the present.
>
> Mr. Brueggen:  Object to the form, argumentative.
>
> A.     I can't. Again, I didn't prepare this response. I can't.
>
> ***
>
> Q.     Do you know why the answer to No. 19 says CHC does not possess any such documents?
>
> Mr. Brueggen: Object to foundation.

       A.     No.

Thomas Dep. at 35:15-22, 36:7-11.

    Q.    Request 20: All documents that discuss, refer, or relate to the termination or discontinuation of Cullinan's provision of services at Lee County Jail.

**RESPONSE: See attached employee file of Dr. Cullinan.**

Cullinan's employee file did not contain any responsive documents. Further, Ms. Thomas had no knowledge of what was done to search for any responsive documents, nor did she have knowledge as to whether such documents exist. Thomas Dep. at 36:22-37:10. She was therefore unable to verify that the production was complete.

    R.    Request 21: All documents that discuss, refer, or relate to the termination or discontinuation of Cullinan's employment at CHC.

**RESPONSE: See attached employee file of Dr. Cullinan.**

Cullinan's employee file did not contain any responsive documents. Further, Ms. Thomas had no knowledge of what was done to search for any responsive documents, nor did she have knowledge as to whether such documents exist. Thomas Dep. at 37:21-38:1. She was therefore unable to verify that the production was complete.

    S.    Request 22: All documents that discuss, refer, or relate to any litigation, arbitration, or other legal proceedings between Cullinan or CHC and any current or former inmate (or their legal representative) treated by Cullinan.

**RESPONSE: CHC does not possess any such documents.**

This response appears implausible on its face. Indeed, Mr. Adams' counsel questioned its completeness given the existence of lawsuits naming both Cullinan and CHC as defendants, and in response, CHC's counsel asserted with no explanation that the response was complete. Ms. Thomas testified that CHC *does* maintain documents related to litigation against its employees, and was unable to explain the response to Request 22. Thomas Dep. at 38:9-19.

6.     After the conclusion of Ms. Thomas' deposition, CHC's counsel acknowledged for the first time that the Subpoena responses were deficient and that supplementation is needed.

7.     Pursuant to Local Rule 37.2, Mr. Adams' counsel hereby state that they met and conferred with CHC's counsel on January 20, 2015 (Chaiken, Litoff, Brueggen, Campbell) regarding their Motion for Order to Show Cause, and have not been able to reach agreement after good faith attempts.[5] Further, Mr. Adams' counsel consulted with CHC's counsel on numerous occasions regarding the issues raised in the Motion to Compel Compliance with Subpoena and have not been able to reach agreement after good faith attempts. Specifically, the parties engaged in a telephonic meet and confer on January 20, 2015 (Chaiken, Litoff, Brueggen, Campbell).[6]

WHEREFORE, Plaintiff Byron Adams respectfully requests an order compelling CHC to completely and accurately respond to the Subpoena within seven days, and an order to show cause as to why CHC did not comply with the Court's January 13, 2015 Order and why CHC should not be ordered to compensate Mr. Adams' counsel for time spent preparing for the deposition (Chaiken – 5 hours); time spent attending the deposition (Chaiken – 2 hours); costs related to the court reporting of the deposition; time spent drafting this Motion and appearing before the Court to present this Motion; and any other relief the Court deems appropriate.

---

[5] CHC's counsel offered to produce Mr. Hamilton for a deposition on January 21, 2015. However, Mr. Adams' counsel explained that Mr. Hamilton's deposition would not be useful at this juncture given (1) counsel's acknowledgment that supplementation was needed in any event; (2) Ms. Campbell's representation to the Court that deposing Mr. Hamilton would be "a waste of everyone's time"; and (3) the close of fact discovery on January 21, 2015. *See* Communications attached as Ex. 6.

[6] To the extent that CHC complies with the Subpoena before this Motion is presented, Plaintiff's counsel will notify the Court at presentment. *See* Ex. 6.

DATED: January 21, 2015

/s/ *Tal C. Chaiken*
James P. Gaughan
Tal C. Chaiken
Eli J. Litoff
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606
Tel: 312-258-5500
Fax: 312-258-5600
jgaughan@schiffhardin.com
tchaiken@schiffhardin.com
elitoff@schiffhardin.com
*Counsel for Plaintiff Byron E. Adams*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 21, 2015, a copy of the foregoing was filed electronically with the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<u>/s/ *Tal C. Chaiken*          </u>
Tal C. Chaiken